**In re James Martin KELLY,
Senior District Justice.**

No. 1 JD 00.

Court of Judicial Discipline
of Pennsylvania.

June 29, 2000.
Order Filed Aug. 23, 2000.

Before PANELLA, President Judge, and SYLVESTER, SWEENEY, BYER, RUSSO, SPOSATO, LEADBETTER and MILLER, JJ.

RUSSO, Judge.

## I. INTRODUCTORY SUMMARY

The Judicial Conduct Board (Board) has filed a Complaint with this Court against Senior District Justice James Martin Kelly (Respondent). The Complaint consists of four Counts based upon allegations that Respondent contacted another district justice seeking favorable treatment for a friend of his in connection with a traffic violation which was scheduled for disposition before the other district justice.

The Board and the Respondent have submitted stipulations of fact in lieu of trial under C.J.D.R.P. No. 502(D)(1), and a waiver of trial. The Court hereby accepts those stipulations of fact in pertinent part, recited below, as the facts necessary for disposition of this case.

## II. FINDINGS OF FACT

1. The Judicial Conduct Board (hereinafter referred to as the "Board") is empowered by Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania to file formal charges alleging ethical misconduct on the part of judges, justices, or justices of the peace and to present the case in support of the formal charges before the Court of Judicial Discipline.

2. Senior District Justice James Martin Kelly (hereinafter referred to as "Respondent") was the duly-elected district justice who served Magisterial District 07-1-09. Magisterial District 07-1-09 encom-passes the Township of Warminster and the Borough of Ivyland in Bucks County, Pennsylvania.

3. The Respondent commenced his judicial service on or about January 5, 1976.

4. The Respondent terminated his service as a district justice for Magisterial District 07-1-09 on or about January 2, 1994.

5. Since retirement, the Respondent sought and was granted senior district justice status. He has from time to time served as a senior district justice in various magisterial districts throughout the Commonwealth of Pennsylvania. The Respondent is certified as a senior district justice as of this date.

6. During October of 1999, the Respondent was presiding as a senior district justice at Magisterial District No. 38-1-05 in Montgomery County. The Respondent was serving due to the retirement of District Justice Henry Liss.

7. On or about August 31, 1999, a traffic citation was filed at the office of District Justice Donald Nasshorn, the district justice serving Magisterial District 07-2-07 of Newtown, Bucks County, Pennsylvania, charging Gerald J. Strowger of 229 East Monument Avenue, Hatboro, Pennsylvania with an illegal turn violation, a violation of Section 3112 of the Pennsylvania Vehicle Code. A true and correct copy of the citation is attached to the stipulations, made a part thereof by reference and marked Exhibit "S-1".

8. A hearing in this case was initially scheduled before District Justice Nasshorn for October 7, 1999, at 8:30 a.m. At the request of Mr. Strowger, the above hearing was continued.

9. This hearing was rescheduled for November 16, 1999, at 8:30 a.m. before District Justice Nasshorn. A true and correct copy of the Notice of Continuance is attached to the stipulations, made a part thereof by reference and marked Exhibit "S-2."

10. After receiving the Notice of Continuance, the said Gerald Strowger contacted the Respondent and discussed with him the upcoming hearing.

11. On or about October 27, 1999, the Respondent wrote a note on a copy of the said trial continuance form and caused that annotated copy to be sent to District Justice Nasshorn. A true and correct copy of the Notice of Continuance containing the note from the Respondent to District Justice Nasshorn is attached to the stipulations, made a part thereof by reference and marked Exhibit "S–3." The text of the note from the Respondent to District Justice Nasshorn reads as follows:

> *Don!*
>
> *I would appreciate your help like not guilty he is a great guy he can help you, come through me*
>
> *J Kelly 10–27–99*
>
> *I don't ask to much. I am at Henry Liss office until Dec. 30*
>
> *J K*

12. The said trial continuance form together with the said note requesting favorable treatment was received by and reviewed by District Justice Nasshorn.

13. Respondent wrote the above note and contacted District Justice Nasshorn in an effort to obtain favorable treatment for Gerald Strowger and to influence the decision by District Justice Nasshorn.

## III. DISCUSSION

The Board has charged that the conduct of the Respondent set out in the Complaint and the Stipulations subjects him to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution because that conduct constitutes:

1. such that brings the judicial office into disrepute (Count 1),

2. such that prejudices the proper administration of justice (Count 2),

3. a violation of Rule 2A of the Rules Governing Standards of Conduct of District Justices (Count 3), and

4. a violation of Article V, § 17(b) of the Pennsylvania Constitution by virtue of his violation of Rule 2A of the Rules Governing Standards of Conduct of District Justices (Count 4).

We will address these Counts in the order set out above. In doing so we will refer to, and place reliance upon, the opinions of this Court in the cases of *In re Trkula*, 699 A.2d 3 (Pa.Ct.Jud.Disc.1997) and *In re Joyce and Terrick*, 712 A.2d 834 (Pa.Ct.Jud.Disc.1998). The conduct at issue and the charges in those cases were almost identical to the conduct and charges involved in this case.

In *Trkula*, the Respondent contacted the Statutory Appeals Unit of Allegheny County seeking to influence the outcome of a case on appeal from her court. *In Joyce and Terrick*, Respondents had contacted the Statutory Appeals Unit seeking favorable treatment for defendants who had appealed cases to that court.[1] That conduct is identical to the conduct of this Respondent. The charges in *Joyce and Terrick* are identical to the charges made by the Board in Counts 1, 2, 3 and 4 in this case. Since this Court held in *Joyce and Terrick*, as well as in *Trkula*, that the charges had been established, we adopt those holdings as well as the reasoning which led us there, and come to the same conclusion here. We briefly review that reasoning.

*COUNT 1.* Conduct which brings the judicial office into disrepute.

In *In re Cicchetti*, 697 A.2d 297 (Pa.Ct. Jud.Disc.1997) we said:

> The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determi-

1. Trkula's call was made to influence the outcome against the defendant; however, whichever side was being favored, the ethical character of the calls is undistinguishable.

nation which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

*Id.* at 312.

In *In re Smith,* 687 A.2d 1229 (Pa.Ct. Jud.Disc.1996) we said:

"Disrepute" necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct.

*Id.* at 1239.

In *Trkula* we said:

Certainly the reasonable expectations of the public would include the expectation that a judicial officer will not make an overt, *ex parte* attempt to influence the outcome of a case on appeal from his or her court, to the detriment of the appellant.[2]

*In re Trkula, supra,* at 7.

■ As we observed in *Joyce and Terrick,* the reasonable expectations of the public would certainly include the expectation that a judicial officer will not make an overt, *ex parte* attempt to influence the outcome of any case to the detriment of any party. Consequently, we conclude that the conduct of Respondent was such as to bring the judicial office into disrepute.

**COUNT 2.** Conduct which prejudices the proper administration of justice.

In *In re Smith, supra,* at 1237, we said: [W]hen a judicial officer's conduct departs from the standard expected of judges and has the effect of obstructing or interfering with the systematic operation or normal functions of the court, his conduct *will have effected* the proper administration of the courts. (Emphasis added.)

■ When Respondent delivered his note to "Don" with the message "I will appreciate your help like not guilty ..." he was doing nothing if not "interfering with the systematic operation or normal

functions of the court" and "[such] conduct will have effected the proper administration of the courts." *In re Smith, supra,* at 1237. See also, *Trkula, supra,* at 8.

In addition, as we said in *Trkula,* quoting *Smith:*

[A] judicial officer who engages in conduct which prejudices the proper administration of justice would have the added element of a mental state in which he or she not only knew that the conduct at issue consisted of some neglect or impropriety, *but also acted with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice, for example by effecting a specific outcome.* (Emphasis added.)

*Trkula, supra,* at 8; *Smith, supra,* at 1238.

In delivering the note to District Justice Nasshorn, Respondent had no other purpose than to "[effect] a specific outcome" and, in so doing, he "acted with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice."

**COUNT 3.** Violation of Rule 2A of the Rules Governing Standards of Conduct of District Justices.

Rule 2A of the Rules Governing Standards of Conduct of District Justices provides:

Rule 2. Impropriety and Appearance of Impropriety to be Avoided; Voluntary Appearance as Character Witness Prohibited

A. A district justice shall respect and comply with the law and shall conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. A district justice shall not allow his family, social or other relationships to influence his judicial conduct or judgment. He shall not lend the prestige of his office to advance the private interest of others, nor shall he convey or

2. See n. 1.

permit others to convey the impression that they are in a special position to influence him.

Rule 2A and Canon 2 of the Code of Judicial Conduct are of the same content. The Rule follows the Canon almost word for word, and thus interpretations of Canon 2 by our Supreme Court provide guidance for this Court in applying Rule 2A.

Our Supreme Court, in *In the Matter of Larsen,* 532 Pa. 326, 386, 616 A.2d 529, 559 (1992), stated:

> While this issue has not been addressed in any of the published opinions our Supreme Court had issued on judicial ethics matters, it is clear that an *ex parte* communication by one member of the judiciary to another member of the judiciary may constitute censurable misconduct in Pennsylvania.

The Supreme Court held that Justice Larsen's *ex parte* communication to Judge Ross concerning a case then pending before her was a violation of Canon 2. The Court so held even though it found that Justice Larsen made the communication with no improper motive

> because the conduct by itself raised an appearance of impropriety, which could undermine public confidence in our judiciary.

*Id.* at 391, 616 A.2d at 562.

■ We conclude, therefore, that Respondent violated Rule 2A by making an *ex parte* communication to District Justice Nasshorn concerning Mr. Strowger's case, which was then pending in Judge Nasshorn's court. Of course, in this case, the Respondent's motive in making the communication was improper. See *In re Trkula, supra,* at 9–10.

■ *COUNT 4.* Conduct in violation of Article V, § 17(b) of the Pennsylvania Constitution by virtue of engaging in conduct violative of a canon of legal or judicial ethics prescribed by the Supreme Court, to wit, Rule 2A of the Rules Governing Standards of Conduct of District Justices.

Section 17(b) of Article V of the Pennsylvania Constitution provides:

> Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. Justices of the peace shall be governed by rules or canons which shall be prescribed by the Supreme Court.

■ We hold, as we did in *In re Joyce and Terrick, supra,* for the reasons set forth therein at pp. 845–46, that a violation of any of the Rules Governing Standards of Conduct of District Justices constitutes an automatic, derivative violation of § 17(b) of the Constitution.

## IV.  CONCLUSIONS OF LAW

1.  Respondent's conduct in contacting District Justice Nasshorn in the case of Gerald Strowger constitutes:

a.  such that brings the judicial office into disrepute,

b.  such that prejudices the proper administration of justice,

c.  a violation of Rule 2A of the Rules Governing Standards of Conduct of District Justices, and

d.  a violation of Article V, § 17(b) of the Pennsylvania Constitution.

2.  Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

## ORDER

PER CURIAM.

■ AND NOW, this 23rd day of August, 2000, the Court, having conducted a Sanction Hearing on August 23, 2000, in consequence of having found that Respondent's conduct in attempting to influence another district justice in the disposition of a violation of the Motor Vehicle Code to be (a) such that brings the judicial office into disrepute, (b) such that prejudices the proper administration of justice, (c) a violation of Rule 2A of the Rules Governing

Standards of Conduct of District Justices, and (d) a violation of Article V, § 17(b) of the Pennsylvania Constitution, repeating the language of the Order of this Court entered in 1998 in a case involving similar charges which declared as follows:

That however common and routine the practice of tampering with the disposition of Motor Vehicle Code violations including traffic tickets may have been in earlier eras, the practice is in the present time repellent to principles of equal justice under the law for all citizens,

That a *"fix"* may not be cloaked as a *"favor"* or a *"break"*, for even the least perversion of the process of lawful disposition of traffic offenses befouls the justice system, and venalizes the offender, the district justice, those court personnel who observe the tampering, and those members of the public who learn of it from the offender,

That the practice of tampering with the lawful disposition of traffic offenses can no longer be an accepted phenomenon of society, for the knowing wink must be eliminated as an option of the traffic offender, and the lawful administration of the traffic docket of all district justices must henceforth be maintained or severe sanctions will follow,

taking guidance from that Order, the Court HEREBY imposes the SANCTION OF SEVERE REPRIMAND and it is ORDERED that Respondent henceforth shall not be eligible to accept any assignments as a senior district justice.

BYER, J., did not participate in the consideration or disposition of this decision.